**UNITED STATES WORSTED SALES CO. v. DANIEL BOONE WOOLEN MILLS, Inc. Petition of GORDON. GORDON v. BRUNDAGE.**

(Circuit Court of Appeals, Seventh Circuit. December 8, 1925.)

No. 3613.

1. Receivers ⬅139—Rejected bidder held to have no right to have sale set aside as in fraud of creditors.

Bidder in a receiver's informal sale, having no right to compel acceptance of his bid, cannot have sale set aside as in fraud of creditors and stockholders, and bidding reopened, though he offers to increase highest bid; the wrong, if any, being done to the estate.

2. Receivers ⬅139—Rejected bidder, not seeking to have bid accepted, cannot complain of failure to report sale.

A rejected bidder at receiver's sale, who did not seek to have his bid accepted and property awarded to him, cannot ask that sale be set aside because no report of sale was made to the court.

**3. Receivers ⬤⟹214—Receiver, wrongfully receiving inadequate price, is answerable on bond to parties in interest.**

If chancery receiver, through his wrongful conduct, has received an inadequate price for property, he is answerable on his bond to the parties in interest.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the United States Worsted Sales Company against the Daniel Boone Woolen Mills, Inc., in which Edward J. Brundage was appointed receiver of the Daniel Boone Woolen Mills, Inc. Petition by Max A. Gordon to set aside receiver's sale and to order resale, opposed by the receiver. From an order dismissing the petition, petitioner appeals. Affirmed.

The appeal is from an order of the District Court denying appellant Gordon's petition to set aside a sale of merchandise made by appellee receiver, and to order resale. Appellee was appointed receiver in chancery of Daniel Boone Woolen Mills, with usual powers, and special power to conduct its men's clothing manufacturing business as carried on at its plant at Rock Island, Ill. On March 17, 1925, upon receiver's petition, the court authorized him "to sell said stock of merchandise, cloth, and made-up garments of said defendant at best price obtainable therefor"—no further order or direction being given. The receiver caused telephone notice of the sale to be given a number of dealers. Gordon, learning of it, on forenoon of March 30, called on receiver, who told him bids must be in that day at 2:30, by which time Gordon made up and handed receiver sealed bid, fixing prices per article on the receiver's enumerated classifications of the goods. After Gordon left, Benjamin and Levy, prospective bidders conferred orally with receiver, and suggested they would give $125,000. Receiver then asked his assistant to figure Gordon's bid, and was told it aggregated $133,000. Benjamin offered $140,000, which the receiver then accepted, giving Benjamin a letter to that effect. There were no other bidders. Gordon came in the same afternoon and was told by the receiver of the higher bid and the sale.

Next morning Gordon came to the receiver, saying his bid actually figured $153,080.85, as was the fact. Benjamin and Levy had gone to Rock Island and taken possession, started to organize the factory, and disposed of considerable of the merchandise. Upon the receiver's request, one of them at

once came to Chicago, and in conference with the receiver it was found that some of the lots were considerably less in number than had been supposed, and these buyers were induced by the receiver to raise their price to $150,700, which, it is claimed, would have been slightly more than Gordon's bid, when allowance was made for the shortage of goods. Gordon and his attorney called again that day, and were told of the fact that the other parties had agreed to pay more, and Gordon says he offered to pay still more, but was told the goods had been sold. The following day his attorney called on the receiver to talk the matter over, but nothing came of it, and on April 6 Gordon filed his petition. In the meantime the buyer was busily disposing of the goods and making up such as were unfinished. No report of the sale was made to the court.

The petition sets forth substantially these facts, and alleges it is for the best interests of the creditors that the goods be sold to the highest bidder, that the sale effected was in fraud of the creditors and stockholders, and in disregard of the rights of the petitioner, and that it is for the best interest of stockholders that the sale be not confirmed, but set aside and reopened for further bids. The relief asked was that the receiver be restrained from completing the sale he had made, and be ordered to reopen the sale, "and to sell said goods for the highest price obtainable, regardless of whom the bidder may be." Upon the hearing of the petition, Gordon stated he would, if the merchandise was again offered, raise his bid by $15,000. Gordon was not a stockholder or creditor.

Werner W. Schroeder, of Chicago, Ill., for appellant.

Ralph F. Polter, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. (after stating the facts as above). It may be gathered from the undisputed facts that the price which Benjamin ultimately paid was slightly higher than Gordon's bid, if the latter were reduced to make allowance for the discrepancy between the actual quantity of merchandise and the amounts thereof the receiver had stated as basis for the bids. True, it is claimed that Gordon was willing to pay more; but at the time the price was finally agreed on it seems that Benjamin's figure, however reached or induced, was the highest. The sale was conducted with perhaps regret-

table informality. There was no general notice of it. The successful bid was oral, and Gordon was required to put his in writing. It is possible more might have been obtained for the goods; at the same time, it is not claimed that they were sold at unreasonably low prices. However, trouble would more likely have been avoided, had the sale been more formally conducted.

[1] But if Gordon had no right to compel acceptance of his bid, and to claim the goods as his own, it is not perceivable that he has any interest in the matter. He may complain only because his own rights have been invaded, and not because the estate or those interested in it have been harmed. In our view, the very prayer of his petition is for relief, not of a wrong to him, but a wrong to the estate, or those interested in it as creditors or stockholders. He was not authorized to act for these. Had the goods been secretly and privately sold to a favored purchaser, and at a wholly inadequate price, Gordon could not be heard to complain.

[2] Much stress is laid on the fact that no report of the sale was made to the court, and appellant insists this is necesary, even though the order of sale did not require it. While in practice it would be far better to require bulk sales by court officers of large quantities of merchandise to be reported to the court, and, whether required or not, for officers making such sales to report them to the court before final consummation, suffice it here to say that, since Gordon did not seek to have his bid accepted, and the property awarded him, he has no interest in any question of report or approval of the sale.

[3] In passing on the petition the District Judge very properly said: "If the receiver through his wrongful conduct has received inadequate price for the property, he is answerable on his bond to the parties in interest."

The District Court properly dismissed the petition for want of equity, and its order to that effect is affirmed.